```
             UNITED STATES BANKRUPTCY COURT
            FOR THE SOUTHERN DISTRICT OF IOWA
```

IN RE:

RITA J. KLAAS                                   Chapter 7

    Debtor.                                  Bankruptcy No. 05-01839

LARRY THOMAS LAVERTY, JR.

    Plaintiff

vs.                                         Adversary No. 05-30063-wle

RITA J. KLAAS

    Defendant.


<u>MEMORANDUM DECISION</u>

    Larry T. Laverty, Jr. asks the court to determine that his claim against debtor Rita J. Klaas is excepted from Klaas's discharge under 11 U.S.C. § 523(a)(15). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Trial was held August 2, 2006 in Des Moines. Richard F. Mitvalsky appeared as attorney for Laverty. Francis P. Hurley appeared as attorney for Klaas.

    Laverty is 40 years old, and so is Klaas. They were married on March 22, 1986. The decree dissolving their marriage was entered by the Iowa District Court for Marshall County on February 10, 2004. Laverty and Klaas were awarded joint custody of the couple's three children--Robert, Lindsay, and Lora. The court named Laverty as the children's primary physical caretaker. Laverty has remarried, and he and his wife, Andrea, live in Western Springs, Illinois. All three of the Laverty children reside with Larry and Andrea. Lora is 18 years old; Robert is

16, and Lindsay is 13.

Laverty's claim arises from the Iowa District Court decree dissolving the marriage between him and Klaas. As part of the division of marital property, the state court allotted the couple's debts between them and required each of the parties to "indemnify and hold the other harmless from liability on any debts for which he or she is responsible under [the dissolution] Decree"(exhibit A at 11). Most of the debts were joint obligations to creditors.

The court awarded the family home to Klaas, and allocated to her the first and second mortgage debts against the home. The mortgagees at the time of the dissolution were F & M Bank, the holder of the first mortgage, and Ocwen Federal Bank, the holder of the second mortgage. Since the dissolution, F & M Bank has foreclosed its mortgage in full satisfaction of its claim. At the time of Klaas's bankruptcy filing, it was believed that Ocwen's claim was unsecured. Also allocated to Klaas were debts to Discover credit card, Wachovia credit card, Sears, and various medical bills.

The court ordered each of the parties to be responsible for their own student loans. However, prior to the dissolution proceeding, the couple had consolidated their separate loans into one debt to Sallie Mae Servicing (or its principal). Laverty and Klaas both estimate the debt at $95,268.05 (exhibit L, p. 2 and Klaas's schedules). Laverty estimates that 60 percent of the student loan debt is for his loans. Klaas does not disagree.

That would amount to $57,160.83 for Laverty and $38,107.22 for Klaas.

Also pursuant to the decree, Laverty was required to pay $250.00 per year per child for medical expenses in excess of insurance coverage, to a maximum of $500.00 annually. After his payment of the first $500.00 of excess expenses, Laverty and Klaas were to divide any additional medical expenses not covered by insurance. Laverty was to pay two-thirds of the additional expenses; Klaas was to pay one-third of them. Since the decree entered, Laverty has paid $5,866.05 of medical bills not covered by insurance and in excess of the $500.00 maximum. Klaas's share of these expenses is $1,935.80.

Laverty and Klaas were to divide equally the cost of the licensed psychologist appointed by the court to evaluate the capacity of the parties for child custody. The cost was $3,100.00. Laverty paid the amount due in full. Under the decree, Klaas is obligated to Laverty for her share which is in the amount of $1,550.00.

Klaas was required by the decree to pay child support to Laverty with the amount of the payment changing as each child reached majority. Initially, for the three children, the support payment was $587.00 per month. In June 2006, it was reduced to $492.00 per month. It is expected that it will drop to $337.00 per month in June 2008 and to zero in June 2010. Reductions in her support obligation may be affected by a child's pursuit of post-high school study or training.

After the divorce, on joint debts assigned to Klaas, creditors made collection efforts against Laverty. He fully settled the claim of Sears by paying it $1,409.51. He settled a claim by McFarland Clinic, P.C. by paying it approximately $2,000.00. He says the McFarland settlement should be reimbursed to him by Klaas as it was part of the medical bills allocated to her by the decree (exhibit A, pp. 4 and 11). Klaas does not dispute her pre-bankruptcy obligation to Laverty on this debt.

At the time of the trial of this proceeding, Laverty's claims against Klaas under the hold harmless and reimbursement requirements of the decree were as follows:

| | |
|---|---:|
| Ocwen debt (second mortgage debt) | $23,670.10 |
| Sears settlement | 1,409.51 |
| Court cost - psychologist | 1,550.00 |
| Klaas one-third share medical bills | 1,935.80 |
| McFarland Clinic, P.C. settlement | 2,000.00 |
| Total | $30,565.41 |

He also claims that Klaas has a nondischargeable obligation under the decree to hold him harmless from any payment by him in excess of his 60 percent share of the consolidated student loans.

The central feature of Laverty's complaint is that the property settlement allocation in the decree is excepted from discharge under 11 U.S.C. § 523(a)(15), as it is a debt to a former spouse incurred by debtor in connection with a divorce decree of a court of record, and it is not a debt for alimony, maintenance, or support. See 11 U.S.C. §§ 523(a)(15) and (a)(5) prior to amendment by BAPCPA.

I conclude that Klaas's obligation under the decree for

4

child support and for reimbursing Laverty for a one-third part of the children's annual medical expenses are not within the purview of section 523(a)(15) as they are in the nature of a support obligation under section 523(a)(5).  They are nondischargeable under section 523(a)(5).  Klaas does not appear to dispute this.

Klaas, however, contends that her property settlement obligation under the decree requiring her to hold Laverty harmless on the second mortgage debt, the student loan, the credit card bills, the medical bills, and the cost of the court psychologist should be discharged under the exception stated in 11 U.S.C. § 523(a)(15)(A) or (B).  Those subsections state in pertinent part that non-support and non-alimony obligations arising in connection with a divorce decree are not dischargeable <u>unless</u>

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor....; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences ... to a former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15)(A) and (B).

Klaas is a college graduate with double business majors at Iowa State University.  She studied transportation logistics and production and operations management.  Since August 2004, she has been employed in the purchasing division by Kreg Tool Company in Ames.  As a result of a pay raise in February 2006, Klaas earns $19.15 per hour for a 40-hour workweek.  She is paid biweekly.

Her gross income equates to $3,319.33 per month or $39,832.00 per year. According to a recent change in company policy, she is eligible for pay increases once per year until she has been with the employer for ten years. Pay increases will then depend on the employer's financial condition. In August 2004, Klaas's starting pay at Kreg Tool Company was $11.53 per hour. In January 2006, she received a bonus of $750.00; however, she says that she can expect no more bonuses, because the employer plans to put more into the employee profit sharing plan. Nonetheless, her base pay has increased by 66 per cent in two years. It is likely it will continue to increase, at least for the next eight years.

From her gross pay, her employer deducts withholding taxes, payments into Klaas's FLEX dental and insurance accounts, a mandatory 401(k) payment, a small United Way donation, and a creditor's garnishment in the amount of $227.07. There is no indication when the garnishment will cease.

Her pay stub for the period ending July 22, 2006 shows net pay for the two-week pay period of $857.36 (exhibit 101). This is equivalent to $1,857.61 per month.

Klaas's federal tax return for 2005 shows gross income from wages in the amount of $26,914.00 (exhibit 102). Her raise will result in an annual increase in wages of nearly 48 percent from 2005 to 2006. For the 2005 tax year, Klaas received a refund from the IRS in the amount of $1,703.00 (id.). This is equivalent to additional monthly income of $141.92 during 2005.

6

Klaas asserts that her monthly take-home pay is $1,957.19 (calculated from exhibit 105). Laverty contends that this amount is understated because it fails to account for state and federal tax refunds. A projected return for Klaas under her current wages was introduced into evidence by Laverty (exhibit C). It shows estimated state and federal tax liability for Klaas under the current wage as $4,658.69 (id.). Laverty compares this to the withholding shown on Klaas's most recent pay stub (exhibit 101). This shows current state and federal income tax withholding as $62.00 and $173.71 respectively. This equals total withholding for income taxes in an annualized amount of $6,128.46, providing estimated refunds of $1,469.77. Klaas responds that as she did not receive her raise until February 2006, she will not receive the total income for 2006 that is shown in exhibit C. Nonetheless, she testified that she supposed she was overpaying her taxes by about $1,500.00. Based on the evidence, I estimate Klaas's monthly income is approximately $125.00 per month greater than the figure of $1,957.19 (exhibit 105). I estimate her monthly take-home pay at $2,082.19. This figure takes into account a payroll deduction for her child-support obligation to Laverty.

In her exhibit 105, Klaas shows $1,967.21 per month in expenses. These break down as follows and do not include health and dental insurance which are deducted from her pay.

| | |
|---|---|
| rent | $  565.00 |
| auto insurance | 21.84 |
| renter's insurance | 16.16 |
| electric | 45.08 |

7

```
          cell phone                    73.36
          home phone                    27.16
          water                         35.00
          gas (home)                    76.00
          cable tv                      25.00
          internet                      25.00
          gas for auto                 250.00
          groceries                    250.00
          clothing                      75.00
          entertainment                 25.00
          pet supplies                  25.00
          vet bills                     21.00
          car repairs                  125.00
          household goods               40.00
          doctor/hospital              150.00
          prescriptions                 96.61

          total                     $1,967.21
```

(exhibit 105).  Klaas has some health conditions which require prescription drugs and regular medical care and testing.  She says she probably will need a hysterectomy.  There was no expert medical testimony that any medical condition would affect Klaas's ability to earn a living at or above her current level of income.

After the court's adjustment to monthly income, and assuming all of Klaas's monthly expenses as stated by her, there would be net income after all expenses of $114.98 per month.  Klaas's monthly expenses do not appear to be extravagant.  However she believes she can reduce her cell phone bill to $55.00, a reduction of approximately $18.00.  Her discretionary expenses for personal enjoyment total $121.00 per month for cable tv, internet access, pet expenses, and general entertainment.  I consider $100.00 reasonable in determining her ability to pay her obligation to Laverty.  The reduction in cell phone expenses and the reduction in entertainment expenses, increases monthly net income to $153.98 ($114.98 + $18.00 + $21.00).

8

Klaas filed her chapter 7 petition on March 23, 2005. She says she has post-filing debts including, but not limited to, the following:

| | |
|---|---:|
| auto repairs | $1,014.50 |
| Story County Hospital | 681.06 |
| Anesthesia Assoc. of Central Iowa | 32.75 |
| Doran Clinic | 483.62 |
| Mary Greeley Medical Center | 424.26 |
| Dunahoo Law Firm | 940.00 |
| Martin Property Management | 2,500.00 |
| Story County Clerk of Court | 90.00 |
| Total | $6,166.19 |

In addition, she would owe at least her share of the student loan debt in the amount of $38,107.22. The student loan debt in its entirety, including "her share" under the decree, is likely excepted from Klaas's discharge. Her post-petition debts in the approximate amount of $6,166.19 are not affected by her discharge. Thus Klaas has $44,273.41 in debts for which she is responsible (not including Laverty's share of the student loan debt). Laverty asks the court to determine that an additional amount of $30,565.41 is excepted from discharge because under the dissolution decree, Klaas must hold him harmless on debts comprising that amount (see list, page 4, supra).

Were the court to decide in Laverty's favor, Klaas would be liable for approximately $74,838.82 in debt to her creditors and by her obligation to Laverty. Klaas says she is unable to pay. The burden of proof is on Klaas to show her inability to pay the debt.

I conclude that in considering the debtor's ability to pay a divorce-related obligation, the court should not be limited to a

9

"snap shot" picture of the debtor's financial situation, either at the time of filing bankruptcy or at the time of the filing of the complaint. A court should "interpret section 523(a)(15)(A) in a manner which considers both [the debtor's] current finances and his [or her] potential capacity to pay the debt in question thereby providing the most accurate gauge of his true 'power to perform.'" Humiston v. Huddelston (In re Huddelston), 194 B.R. 681, 688 n. 13 (Bankr. N.D. Ga. 1996). The standard for section 523(a)(15)(A) should encompass, at a minimum, the following considerations:

>    (1) the debtor's "disposable income" as measured at the time of trial;
> 
>    (2) the debtor's opportunities for more lucrative employment;
> 
>    (3) the extent to which the debtor's burden of debt will be lessened in the near term; and
> 
>    (4) the extent to which the debtor previously has made a good faith effort to fully employ himself and to satisfy the debt in question.
> 
> In the same manner that a totality of circumstances has proven the most accurate gauge of a debtor's "ability to pay" his student loans, so must courts give consideration to a debtor's current circumstances, prospect for change, and degree of effort to improve his situation, before concluding that he lacks the "ability" to pay his divorce-related obligations.

Id. at 688-89.

There seems to me to be no science in determining whether a debtor has the future ability to pay a property settlement. Having considered the evidence in this case, I find that Klaas has not proven her inability to pay the property settlement obligation owed to Laverty.

10

In making this determination, I consider the following facts and factors: considering her present income and her present expenses, I estimate that Klaas has net disposable income in the amount of $153.98 per month; Klaas has a college education, and she appears to have a stable job; Klaas's income has risen significantly in the two years she has been employed at her present position, and her income is likely to continue to increase, at least for the next eight years. Also Klaas is relatively young, 40 years old, and appears in relatively good health. Bankruptcy has afforded her a discharge of significant debts, and although she does have post-bankruptcy debts of approximately $6,166.00, these appear to have arisen during a low period in her employment history.

She does not have primary physical care of any of her three children. Her obligations to them financially appear limited to the child support she pays to Laverty, including her share of the children's medical bills in excess of insurance coverage. Her child support obligation has decreased, and it will continue to decrease. The monthly payment is $492.00 per month, and it will decrease to $337.00 in June 2008. It will drop to zero in June 2010, less than four years in the future. She introduced no evidence as to how long the present garnishment of her wages would continue.

Last, I consider that her major debt on the consolidated student loans is excepted from discharge in any event. She owes Sallie Mae, jointly with Laverty, the sum of $95,268.05. Her

11

obligation to Laverty appears to be to hold him harmless from any payment by him on the loan in excess of $57,160.83. And, he must hold her harmless from any payment by her on the loan in excess of $38,107.22. These are generally long-term loans. Payment of their allocated shares may require Klaas and Laverty to work together with Sallie Mae to provide for payments proportional to their obligations as allocated by the state court. There was no evidence introduced by Klaas on her efforts to repay any part of the student loan obligation or as to any available programs for doing so. Certainly as to the student loan obligation, if she were attempting to discharge it directly, she would have to show undue hardship. See 11 U.S.C. § 523(a)(8). As to her obligation to Laverty to pay her share, she has failed to meet her burden to show that she does not have the ability to pay.

Alternatively, Klaas asserts that her property settlement obligation to Laverty should be discharged because "discharging such debt would result in a benefit to [her] that outweighs the detrimental consequences to ... [her] former spouse ... or [children]." 11 U.S.C. § 523(a)(15)(B). This Code section directs the court to examine the "relative ability of [the parties] to absorb a determination of dischargeability." Humiston v. Huddelston (in re Huddelston), 194 B.R. 681, 689 (Bankr. N.D. Ga. 1996).

> Thus, "if a non-debtor spouse would suffer little
> detriment from the debtor's nonpayment of an obligation
> required to be paid under a hold harmless agreement
> (perhaps because it could not be collected from the
> non-debtor spouse or because the non-debtor spouse
> could easily pay it) the obligation would be

12

>    discharged," even though the debtor himself might have the ability to pay the obligation.

Id. at 689 (citing H.R. Rep. No. 835, 103d Cong., 2d Sess. 54 (1994)).

In applying the statute's balancing test, I conclude that I should consider all financial and non-financial effects of discharge. These considerations include the assets and liabilities of the parties.

Klaas's assets, as shown on her bankruptcy schedules are as follows:

| | |
|---|---:|
| homestead | $63,600.00 |
| cash | 50.00 |
| checking | 10.00 |
| savings | 25.00 |
| security deposit - utilities | 130.00 |
| household goods | 721.00 |
| clothing | 50.00 |
| jewelry | 20.00 |
| 401(k) plan | 268.00 |
| accrued wages and tax refund | unknown |
| 1996 motor vehicle | 500.00 |

(Upon the request of Klaas's attorney, the court took judicial notice of the information in the debtor's bankruptcy "petition" which the court understood to mean also her schedules. There was no objection by Laverty's attorney.)

All of these items were claimed exempt. The home was lost to foreclosure by the first mortgagee. There was no evidence of Klaas's assets beyond the date of her bankruptcy filing, which was March 23, 2005.

Laverty's assets at the time of trial were listed on exhibit L. The list was likely not complete, as it did not contain assets normally owned, such as clothing. However, it was not

13

significantly less complete than Klaas's appeared to be. Laverty's assets, except for a NetBank checking account, are owned jointly with his wife Andrea. He valued his assets as follows:

| | |
|---|---:|
| Chevy Lumina | $   500.00 |
| Bank One checking | 1,500.00 |
| NetBank checking | 500.00 |
| computers | 1,300.00 |

Laverty's wife, Andrea, brought significant assets to the marriage. These were listed on exhibit L.

| | |
|---|---:|
| town house | 300,000.00 |
| Chrysler Pacifica | 15,000.00 |
| Honda Odyssey | 8,000.00 |
| Morgan Stanley checking | 5,000.00 |
| furniture | 8,000.00 |
| television sets | 500.00 |

Exhibit L. Laverty has the following financial obligations:

| | |
|---|---:|
| personal loan (joint with Andrea) | 9,500.00 |
| personal loan | 900.00 |
| debt to Farmers Savings Bank | 1,800.00 |
| Ocwen (joint with Klaas) | 23,160.00 |
| Sallie Mae (joint with Klaas) | 95,268.05 |

Exhibit L.

Laverty is employed by Bronson & Bratten, Inc. as an engineer. His gross monthly income is approximately $4,170.00. I calculate this from exhibit L. On the exhibit, Laverty states his income is $2,085.00 "bi-monthly." I will infer he meant twice per month, not every two months (<u>see</u> exhibit I). He says his monthly net after taxes is $3,364.98. His regular monthly net pay does not include "Team Bonuses" as shown on exhibit I. There is no evidence on how often such bonuses are paid.

Andrea is entitled to maximum distributions of $4,000.00 per

month from the Andrea McPherson Trust.  The trust was established by Andrea's father.  Contributions and distributions are made considering Andrea's needs and the needs of her son, Casey, age 15.  Laverty's pay and Andrea's trust distribution total about $7,364.98 in net income per month, plus any bonuses to Laverty.

Casey lives with Laverty and Andrea.  He has special needs.  He is autistic.  He developed a tumor at age two, and as a result he has permanent brain damage.  He also has pituitary gland damage, and he suffers from epilepsy.  He has problems with his esophagus caused by esophageal erosion.  He also has food allergies and suffers internal bleeding from time to time from those.  He also suffers from problems to his immune system, and he has neurological motor deficiencies.  He is under the care of specialists including a gastroenterologist and a neurologist.  Casey will go into a special learning public school program next year.

Casey cannot be without constant care.  Andrea says he will never live independently and therefore she must consider long-term care options.  In addition to Casey's illnesses, Andrea suffers from diabetes.

Laverty and Andrea's monthly expenses are shown on exhibit L.

```
real estate taxes                              $ 711.00
household repairs and maintenance                 50.00
association fees for townhouse                   360.00
natural gas                                       95.00
electric                                         195.00
garbage collection                                50.00
water                                             85.00
cable tv                                          75.00
```

15

```
telephone                                    115.00
cell phone                                    59.00
auto gasoline                                440.00
auto insurance                               254.00
auto maintenance                             150.00
groceries                                  1,300.00
dining out                                   250.00
dry cleaning                                  40.00
household supplies                           400.00
cosmetics                                    100.00
snacks, coffee, misc. expenses                20.00
hair care                                    120.00
clothing                                     250.00
books, magazines                              35.00
newspapers                                     7.00
pets                                          10.00
church or synagogue                           20.00
allowances for children                       80.00
school tuition                               250.00
school supplies                               10.00
other school costs                            15.00
school pictures                               15.00
health insurance                             224.00
medical:
    eyeware                                   50.00
    optical/optometrist                       50.00
    doctor                                   120.00
    dentist                                   50.00
    orthodontist                             150.00
    prescriptions                          1,500.00
student loan                                 321.00
other                                        951.00
Lora's College                               250.00

Total                                     $9,227.00
```

As stated, between Laverty's net income and the monthly distributions to Andrea from the trust, the couple's net monthly income is about $7,365.00. With monthly expenses of $9,227.00, monthly cash flow is negative $1,862.00. This is reduced to a negative $1,370.00 by Klaas's payment of child support in the amount of $492.00 per month.

It may be that some of the expenses shown for the family on exhibit L might be reduced. Some are not explained in detail

16

such as the $951.00 per month for "other" expenses. Nonetheless they do not appear extravagant to the extent that the expenses could be reduced to a level equal to the couple's net monthly income.

The effect of discharging the property settlement obligation would be to place the entire burden of paying $68,672.63 in debt on Laverty without any requirement of future reimbursement from Klaas under the dissolution decree. This would be a significant burden on the Laverty family given the costs of primary care for four children including the special needs of Andrea's son. I find that Klaas has failed to prove that discharging her obligation to Laverty would result in a benefit to her that outweighs the detrimental consequences to Laverty and to the Laverty children.

IT IS ORDERED that judgment shall enter that the property settlement obligation of Rita J. Klaas to Larry Laverty, Jr. arising from the dissolution decree entered in the Iowa District Court for Marshall County on February 10, 2004 is excepted from Klaas's discharge under 11 U.S.C. § 523(a)(15).

DATED AND ENTERED ___September 12, 2006_____

William L. Edmonds, Bankruptcy Judge